**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| REBECCA HARTMAN, JOSEPH TURNER, R.H., a minor, by and through her Guardian and Next Friend Rebecca Hartman, and E.T., a minor, by and through his Guardian and Next Friend Joseph Turner, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>         Plaintiffs,<br><br>   v.<br><br>META PLATFORMS, INC.,<br><br>         Defendant. | Case No. 3:23-cv-02995 |

**DEFENDANT META PLATFORMS, INC.'S SECOND AMENDED ANSWER AND
AFFIRMATIVE DEFENSES TO CLASS ACTION COMPLAINT**

Defendant Meta Platforms, Inc., by and through its attorneys, submits its Second Amended Answer and Affirmative Defenses in response to Plaintiffs' Class Action Complaint (ECF No. 1-1). Except as expressly stated below, Meta denies each and every allegation contained in the Complaint. Meta states that the headings and defined terms used throughout the Complaint do not constitute well-pled allegations of fact, and that they therefore require no response. To the extent any response is required, Meta denies the allegations in the headings and defined terms in the Complaint. Meta reserves the right to seek to amend and/or supplement this Answer as necessary.

1.    Plaintiffs allege that Defendant violated BIPA by collecting and possessing from the biometric identifiers and biometric information (collectively, "Biometric Data") of Illinois citizens via Defendant's Facebook Messenger and Messenger Kids applications.

**RESPONSE:** Meta admits that Plaintiffs assert claims under the Illinois Biometric Information Privacy Act ("BIPA") but denies that it engaged in any actionable conduct or that Plaintiffs are entitled to any relief. The remaining allegations in this paragraph state legal

conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

2.      Defendant's Messenger and Messenger Kids applications (collectively referred to herein as "Apps") are messaging and social applications and platforms released by Defendant Meta Platforms in or around August 2011 and December 2017, respectively. The Apps can be downloaded for free from several application stores, such as the Google Play App Store and the Apple App Store. The Apps collect face Biometric Data from users through built-in and downloadable "AR" (augmented reality) filters and effects. Defendant's Apps collect Biometric Data without the knowledge or informed written consent of the application users who use the built-in and downloadable AR filters. Users of the Apps are not told by Defendant that it is collecting Biometric Data.

**RESPONSE:** Meta admits that it owns and operates the applications known as Messenger and Messenger Kids, which are available for download on mobile devices for free from certain application stores. Meta further responds that Meta's disclosures to Messenger and Messenger Kids users speak for themselves and denies the allegations in this paragraph to the extent they mischaracterize those disclosures. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

3.      Defendant violates BIPA Section Section [*sic*] 15(b) through the Apps by collecting scans of face geometries of persons without first obtaining informed written consent.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

4.      Defendant violates Section 15(a) by possessing the Biometric Data of Plaintiffs and other Illinois Citizens without making available to the public and complying with a data retention and destruction policy.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

5.      Through this lawsuit, Plaintiffs, on behalf of a similarly situated class, seek to enjoin Defendant from collecting and possessing their Biometric Data in violation of BIPA, and seek to obtain actual and statutory damages for their injuries.

**RESPONSE:** Meta admits that Plaintiffs' Prayer for Relief includes requests for damages, statutory damages, and injunctive and/or equitable or non-monetary relief but denies that it engaged in any actionable conduct or that Plaintiffs or other members of the putative class have sustained any "injuries" or are entitled to any relief. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

## I.    NATURE OF THE ACTION

6.      Plaintiffs allege that Defendant violated BIPA by profiting from its biometric identifiers and biometric information.

**RESPONSE:** Meta admits that Plaintiffs assert claims based on alleged violations of BIPA but denies that Meta has engaged in the alleged conduct.

7.      Plaintiffs seek to represent a class of individuals whose face geometries were collected, stored, and/or used by Defendant through Defendant's Apps.

**RESPONSE:** Meta admits that Plaintiffs purport to bring this action on behalf of the putative subclasses described in the Complaint, but denies that it engaged in any actionable conduct, that this action may properly be maintained as a class action, that plaintiffs claims are representative of a class, that the class definitions are appropriate, or that this litigation otherwise meets the requirements of Federal Rule of Civil Procedure 23. Meta denies the remaining allegations in this paragraph.

8.      Plaintiffs have suffered significant damage, as more fully described herein, because Defendant has collected their Biometric Data without their knowledge, consent, or understanding, thereby materially decreasing the security of this intrinsically inalterable information, and substantially increasing the likelihood that Plaintiffs will suffer as victims of fraud and/or identity theft.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

9.    Plaintiffs seek actual damages in addition to statutory damages, as provided below in the Prayer for Relief.

**RESPONSE:** Meta admits that Plaintiffs' Prayer for Relief includes requests for actual and statutory damages but denies that Meta has engaged in any actionable conduct or that Plaintiffs are entitled to any relief. Meta denies any remaining allegations in this paragraph.

10.    The remedies Plaintiffs seek are remedial, and not penal, in nature.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

## II.    PARTIES

11.    Plaintiff Rebecca Hartman is a resident of East St. Louis (Alorton) in St. Clair County, Illinois.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

12.    Plaintiff Joseph Turner is a resident of East St. Louis (Alorton) in St. Clair County, Illinois.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

13.    Plaintiff R.H. is a minor under the age of eighteen years, appearing by and through her Guardian and Next Friend Rebecca Hartman. R.H. is a resident of East St. Louis (Alorton) in St. Clair County, Illinois.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

14.    Plaintiff E.T. is a minor under the age of eighteen years, appearing by and through his Guardian and Next Friend Joseph Turner. R.H. is a resident of East St. Louis (Alorton) in St. Clair County, Illinois.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

15.    Plaintiffs' face geometries have been scanned by Defendant, and their Biometric Data were collected, stored, and used by Defendant, as more fully described herein.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

16.    Defendant is a Delaware corporation with its principal place of business in California, that is registered to and does conduct business throughout Illinois.

**RESPONSE:** Meta admits that it is a Delaware corporation and that its headquarters are located in California. Meta further admits that it is registered as a Delaware corporation with the Office of the Illinois Secretary of State. The remaining allegations in this paragraph state legal conclusions to which no response is required.

17.    Defendant is a "private entity" under the meaning of BIPA. 740 ILCS 14/10.

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

III.    JURISDICTION

18.    This Court has personal jurisdiction over Defendant because, during the relevant time period, Defendant was registered to do business in Illinois, conducted business in Illinois, committed the violations alleged in Illinois, and purposefully availed itself of the laws of Illinois for the specific transactions and occurrences at issue.

**RESPONSE:** Meta admits that it is registered as a Delaware corporation with the Office of the Illinois Secretary of State. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that it committed any violations of law as may be alleged in this action.

19.     St. Clair County is an appropriate venue for this litigation because Defendant does business in St. Clair County, and is therefore a resident of St. Clair County. 735 ILCS 5/2-102.

**RESPONSE:** Meta responds that this action has been removed to the United States District Court for the Southern District of Illinois, and that accordingly no response to the allegations in this paragraph is required. In any event, the allegations in this paragraph state legal conclusions to which no response is required.

20.     In addition, the transactions and occurrences out of which the causes of action pleaded herein arose or occurred, in part, in St. Clair County.

**RESPONSE:** Meta responds that this action has been removed to the United States District Court for the Southern District of Illinois, and that accordingly no response to the allegations in this paragraph is required. In any event, the allegations in this paragraph state legal conclusions to which no response is required.

## IV.    THE BIOMETRIC INFORMATION PRIVACY ACT

21.     "Biometrics" refers to "biology-based set[s] of measurements." *Rivera v. Google Inc.,* 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

**RESPONSE:** Meta responds that the decision quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the decision. Answering further, Meta denies the allegations in this paragraph to the extent they are inconsistent with the meaning or construction of BIPA. The remaining allegations in this paragraph state legal conclusions to which no response is required.

22.     BIPA was enacted in 2008 in order to safeguard Biometric Data due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

**RESPONSE:** Meta admits that BIPA was initially enacted in 2008 and is codified in the Illinois Compiled Statutes. Answering further, Meta responds that the legislative record pertaining

to BIPA speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize BIPA's legislative record. The remaining allegations in this paragraph state legal conclusions to which no response is required.

23.    As set forth in BIPA, biologically unique identifiers, such as scans of individuals' facial geometry, cannot be changed. 740 ILCS 14/5(c). As is likewise explained in BIPA, the inalterable nature of individuals' biologically unique identifiers presents a materially heightened risk of serious harm when Biometric Data is not protected in a secure and transparent fashion. 740 ILCS 1415(d)—(g).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

24.    As a result of the need for enhanced protection of Biometric Data, BIPA imposes various requirements on private entities that collect or possess individuals' biometric identifiers, including scans of individuals' facial geometries.

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

25.    Among other things, BIPA regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

26.    BIPA applies to entities that interact with two forms of Biometric Data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)–(e).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

27.    "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. Examples include, but are not limited to, face geometry, fingerprints, voiceprints, DNA, palmprints, hand geometry, iris patterns, and retina patterns. As the Illinois General Assembly has explained:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c). Moreover,

> A person cannot obtain new DNA or new fingerprints or new eyeballs for iris recognition, at least not easily or not at this time. Replacing a biometric identifier is not like replacing a lost key or a misplaced identification card or a stolen access code. The Act's goal is to prevent irretrievable harm from happening and to put in place a process and rules to reassure an otherwise skittish public.

*Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175, ¶ 59, 115 N.E.3d 1080, 1093, *appeal denied,* 119 N.E.3d 1034 (Ill. 2019).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. Answering further, Meta responds that the decision quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the decision. Meta further denies the allegations in this paragraph to the extent they are inconsistent with the meaning or construction of BIPA. The remaining allegations in this paragraph are legal conclusions to which no response is required.

28.     In BIPA's text, the General Assembly provided a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. In this case, the biometric identifiers at issue are the scans of hand and face geometries of individuals, including Plaintiffs, collected by Defendant via its proprietary software without any notice to or consent from the individuals whose biometric identifiers are collected.

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

29.     "Biometric information" consists of biometric identifiers used to identify a specific person. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier *used to* identify an individual." *Id.* (emphasis added).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

30.     In BIPA, the General Assembly identified four distinct activities that may subject private entities to liability:

(1)     collecting Biometric Data, 740 ILCS 14/15(b);

(2)     possessing Biometric Data, 740 ILCS 14/15(a);

(3)     profiting from Biometric Data, 740 ILCS 14/15(c); and

(4)     disclosing Biometric Data, 740 ILCS 14/15(d)

BIPA also created a heightened standard of care for the protection of Biometric Data. 740 ILCS 14/15(e).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

31.     As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.,* 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

**RESPONSE:** Meta responds that the decision quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the decision. Answering further, Meta denies the allegations in this paragraph to the extent they are inconsistent with the meaning or construction of BIPA. The remaining allegations in this paragraph state legal conclusions to which no response is required.

A.     **Collecting Biometric Data Under Section 15(b)**

32.     BIPA establishes categories of prohibited conduct related to Biometric Data, and establishes requirements that parties must follow when interacting with Biometric Data. As Section 15(b) provides:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1)     informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2)     informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3)     receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

33.    To "collect" means "to bring together into one body or place," or "to gather or exact from a number of persons or sources."[1]

**RESPONSE:** Meta responds that the dictionary definition quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize such definition. Answering further, Meta denies the allegations in this paragraph to the extent they are inconsistent with the meaning or construction of BIPA.

34.    Collection, therefore, is the act of gathering together, and is separate from possession, which is not an element of collection.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the allegations in this paragraph to the extent they are inconsistent with the meaning or construction of BIPA.

35.    BIPA imposes three requirements that must be satisfied before any private entity may "collect" biometric information:

(a)    First, the private entity must inform the individual in writing that the individual's biometric information is being collected or stored. 740 ILCS 14/15(b)(1).

(b)    Second, the private entity must inform the individual in writing of the purpose and length of time for which their biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2).

(c)    Finally, the private entity must receive a written release executed by the individual. 740 ILCS 14/15(b)(3).

---

[1] Definition of "collect", Merriam-Webster, https://www.merriam-webster.com/dictionary/collect.

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

36.    BIPA defines a "written release," outside the employment context, to mean "informed written consent." 740 ILCS 14/10

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

**B.    Possessing Biometric Data Under Section 15(a)**

37.    With respect to possession of Biometric Data, BIPA provides as follows:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a). Entities in possession of Biometric Data therefore must develop and make public a written policy containing a retention schedule for Biometric Data, as well as guidelines for the destruction of Biometric Data. *Id.*

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

38.    BIPA requires that the required public, written policy include information about how the entity will destroy Biometric Data. *Id.*

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

39.    The plain and ordinary meaning of the word "possession" is "the act of having or taking into control" or "control or occupancy of property without regard to ownership."[2]

**RESPONSE:** Meta responds that the dictionary definition quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize such definition. Answering further, Meta denies the allegations in this paragraph to the extent they are inconsistent with the meaning or construction of BIPA.

40.    A private entity that controls Biometric Data, therefore, possesses Biometric Data under Section 15(a).

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

41.    Section 15(a) regulates Biometric Data that is controlled by a private entity regardless of whether that entity owns the Biometric Data.

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

---

[2] Definition of "possession", Merriam-Webster, https://www.merriam-webster.corn/dictionary/possession.

42.    Here, for example, Defendant controls Plaintiffs' Biometric Data, even though Defendant does not own that data. Therefore, as alleged in further detail below, Defendant possesses Plaintiffs' Biometric Data under Section 15(a).

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

## V.    THE SERIOUS THREATS POSED BY BIOMETRIC DATA

43.    Use of facial recognition technology can be highly lucrative. The global facial recognition market size is expected to grow dramatically—according to one source, from $3.2 billion in 2019 to $7 billion by 2024.[3]

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

44.    However, the potential dangers of the use of facial recognition technology and other biometric identifiers are widely known.

**RESPONSE:**   To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

45.    "Stolen biometric identifiers . . . can be used to impersonate consumers, gaining access to personal information."[4]

---

[3] *Facial Recognition Market Worth $7.0 Billion by 2024*, Markets and Markets, https://www.pmewswire.com/news-releases/facial-recognition-market-worth-7-0-billion-by-2024--exclusive-report-by-marketsandmarkets-300876154.html.

[4] Elias Wright, *The Future of Facial Recognition Is Not Fully Known: Developing Privacy and Security Regulatory Mechanisms for Facial Recognition in the Retail Sector,* 29 Fordham Intell. Prop. Media & Ent. L.J. 611, 629 (2019).

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

46.     Unlike other identifiers such as Social Security or credit card numbers, which can be changed if compromised or stolen, biometric identifiers linked to a specific voice or face cannot be modified—ever. These unique and permanent biometric identifiers, once exposed, leave victims with no means to prevent identity theft and unauthorized tracking. Recognizing this, the Federal Trade Commission has urged companies using facial recognition technology to ask for consent before scanning and extracting Biometric Data from photographs.[5]

**RESPONSE:** Meta responds that the Federal Trade Commission report cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they mischaracterize the report. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

47.     The threats posed by facial recognition technology can be more insidious than the threats posed by the use of other biometric information, such as fingerprints. Indeed, as commentators have recognized, "facial recognition creates acute privacy concerns that fingerprints do not."[6] Once a person or entity has an individual's facial Biometric Data:

> [T]hey can get your name, they can find your social networking account, and they can find and track you in the street, in the stores that you visit, the . . . buildings you enter, and the photos your friends

---

[5] *See Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies,* Federal Trade Commission (Oct. 2012), https://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

[6] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. On Privacy Tech & the Law of the S. Comm. On the Judiciary,* 112th Cong. 1 (2012) (statement of Sen. Al Franken, Chairman, Subcomm. On Privacy, Tech. & the Law of the S. Comm. On the Judiciary), *available at* https://www.govinfo.gov/content/pkg/CHRG-112shrg86599/pdf/CHRG-112shrg86599.pdf

post online. Your face is a conduit to an incredible amount of information about you, and facial recognition technology can allow others to access all of that information from a distance, without your knowledge, and in about as much time as it takes to snap a photo.[7]

**RESPONSE:** Meta responds that the congressional hearing transcript cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the transcript. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

48.    Researchers have even demonstrated the ability to "infer personally predictable sensitive information through face recognition."[8]

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

49.    Further, facial recognition technology may "be abused in ways that could threaten basic aspects of our privacy and civil liberties[:]"[9]

Biometrics in general are immutable, readily accessible, individuating, and can be highly prejudicial. And facial recognition takes the risks inherent in other biometrics to a new level. Americans cannot take precautions to prevent the collection of their image. We

---

[7] Franken, *supra.*

[8] Alessandro Acquisti et al., *Face Recognition and Privacy in the Age of Augmented Reality,* J. Privacy and Confid. (2014), *available at* https://www.heinz.cmu.edu/Lacquisti/papers/AcquistiGrossStutzman-JPC-2014.pdf.

[9] Franken, *supra.*

walk around in public. Our image is always exposed to the public. Facial recognition allows for covert, remote, and mass capture and identification of images, and the photos that may end up in a data base include not just a person's face but also what she is wearing, what she might be carrying, and who she is associated with. This creates threats to free expression and to freedom of association that are not evident in other biometrics.[10]

**RESPONSE:** Meta responds that the congressional hearing transcript cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the transcript. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

50.    Many experts believe that "facial recognition technology is the most uniquely dangerous surveillance mechanism ever invented."[11]

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

---

[10] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. On Privacy Tech & the Law of the S. Comm. On the Judiciary,* 112th Cong. 1 (2012) (statement of Jennifer Lynch, Staff Attorney, Electronic Frontier Foundation), *available at* https://www.govinfo.govicontent/pkg/CHRG-112shrg86599/pdf/CHRG-112shrg86599.pdf.

[11] *See, e.g.*, Woodrow Hartzog & Evan Selinger, *Facial Recognition Is the Perfect Tool for Oppression,* Medium (Aug. 2, 2018), https://medium.com/s/story/facial-recognition-is-the-perfect-tool-for-oppression-bc2a08f0fe66.

51.     Because of these dangers, "privacy protections," such as those found in BIPA, are necessary for "all facial recognition technologies, including those that do not individually identify consumers."[12]

**RESPONSE:** Meta responds that the Federal Trade Commission report cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the report. Answering further, Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this paragraph state legal conclusions to which no response is required.

52.     Indeed, the Illinois Supreme Court has held that in BIPA the Illinois "General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach,* 129 N.E.3d at 1206.

**RESPONSE:** Meta responds that the decision quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the decision. Answering further, Meta denies the allegations in this paragraph to the extent they are inconsistent with the meaning or construction of BIPA. The remaining allegations in this paragraph state legal conclusions to which no response is required.

53.     In so holding, the Court explicitly recognized the "difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised." *Id.* As it further held, "[t]he situation is particularly concerning, in the legislature's judgment, because [t]he full ramifications of biometric technology are not fully known." *Id.* (citing BIPA).

**RESPONSE:** Meta responds that the decision quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the decision. Answering further, Meta denies the allegations in this paragraph to

---

[12] *See Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies,* Federal Trade Commission (Oct.    2012),    https://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

the extent they are inconsistent with the meaning or construction of BIPA. The remaining allegations in this paragraph state legal conclusions to which no response is required.

54.    With respect to hand and face data used in Facebook Messenger Kids, Defendant claims that it "[does not] store this information on our servers or share it with third parties", but instead stores the information "on your child's device".[13]

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Face and Hand Effects Privacy Notice.

55.    Storing Biometric Data on personal devices (as opposed to on a server) does not remove the substantial dangers associated with Biometric Data, because personal devices are intrinsically vulnerable to hackers and other malicious bad actors.[14] Instead, storing Biometric Data on personal devices creates an independent threat of serious harm that is associated with each personal device that contains Biometric Data.

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

56.    Moreover, Biometric Data may persist on discarded devices. "Realistically, unless you physically destroy a device, forensic experts can potentially extract data from it."[15] The

---

[13]    https://m.facebook.com/help/messenger-app/698345261497544/Messenger+Kids+Face+and+Hand+Effects+Privacy+Notice/?helpref=related_articles&sour ce_cms_id=278 118979024443.

[14]    *See, e.g.,* Taylor Telford, *Google Uncovers 2-Year iPhone Hack That Was Sustained' and `Indiscriminate',* Washington Post (Aug. 30, 2019, 8:52 AM), https://www.washingtonpost. com/business/2019/08/30/google-researchers-uncover-year-iphone-hack-tied-malicious-websites/ (citing Ian Beer, *A Very Deep Dive Into iOS Exploit Chains Found in the Wild,* Google Project Zero Blog (Aug. 29, 2019), https://googleprojectzero.blogspot.com/2019/08/a-very-deep-dive-into-ios-exploit.html; Jeb Su, *Apple Issues 3 Emergency Security Fixes To Block Hackers From Taking Over iPhones, Macs, Apple TVs,* Forbes (Aug. 26, 2019, 7:17 PM), https://www.forbes.com/sites/jeanbaptiste/2019/08/26/apple-issues-3-emergency-security-fixes-to-b lock-hackers-from-taking-over-iphones-macs-apple-tvs/#6fc6f3a76da2

[15] Josh Frantz, *Buy One Device, Get Data Free: Private Information Remains on Donated Tech,* Rapid? Blog (Mar. 19, 2019), https://blogsapid7.com/2019/03/19/buy-one-device-get-data-free-private-information-remains-on-donated-devices/.

Federal Trade Commission has recognized that sensitive data on individual devices poses grave risks, including of identity theft.[16]

**RESPONSE:** Meta responds that the articles cited in this paragraph speak for themselves and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the articles. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

57.    The use of Biometric Data "leads to the fear that a data breach or sale by one holder of a piece of a person's biometric information would compromise the security of all relationships that are verified by that same piece."[17]

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

58.    This fear is not based on mere conjecture. Biometric Data has been illicitly targeted by hackers. For example, a security firm recently uncovered a "major breach" of a biometric system used by banks, police, defense firms, and other entities.[18] This breach involved exposure of extensive biometric and other personal data, including facial recognition data and fingerprints.

---

[16] How to Protect Your Phone and the Data On It, https://www.consumer.ftc.gov/articles/how-protect-your-phone-and-data-it (last visited Dec. 13, 2021).

[17] Matthew B. Kugler, *From Identification to Identity Theft: Public Perceptions of Biometric Privacy Harms,* 10 UC Irvine L. Rev. 107, 132 (2019).

[18] Josh Taylor, *Major Breach Found in Biometrics System Used by Banks, UK Police and Defence Firms,* The Guardian (Aug. 14, 2019, 3:11 PM), https://vvww.theguardian.com/ technology/ 2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

59. Even anonymized Biometric Data poses risks. For example, according to a recent report:

> In August 2016, the Australian government released an "anonymized" data set comprising the medical billing records, including every prescription and surgery, of 2.9 million people. Names and other identifying features were removed from the records in an effort to protect individuals' privacy, but a research team from the University of Melbourne soon discovered that it was simple to re-identify people, and learn about their entire medical history without their consent, by comparing the dataset to other publicly available information, such as reports of celebrities having babies or athletes having surgeries.[19]

> Indeed, "[t]here is a growing skepticism in the field of data protection and privacy law that biometric data can never truly be deidentified or anonymized."[20]

**RESPONSE:** Meta responds that the articles cited in this paragraph speak for themselves and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the articles. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are

---

[19] Olivia Solon, *'Data Is A Fingerprint': Why You Aren't as Anonymous As You Think Online,* The Guardian (Jul. 13, 2018, 4:00 PM) https://www. scribd.com/article/383773122/Data-Is-A-Fingerprint-Why-You-Aren-t-As-Anonymous-As-You-Think-Online.

[20] Justin Banda, *Inherently Identifiable: Is It Possible To Anonymize Health And Genetic Data?,* International Association of Privacy Professionals Privacy Perspectives (Nov. 13, 2019), https://iapp.org/news/a/inherently-identifiable-is-it-possible-to-anonymize-health-and-genetic-data/.

denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the

remaining allegations in this paragraph and on that basis denies them.

60.    The collection and use of Biometric Data is especially problematic in relation to the
collection of Biometric Data from minors, who cannot provide informed consent and may be
unaware of the serious harms that can result from the release of Biometric Data.

**RESPONSE:** To the extent that any of the allegations in this paragraph refer to actions or

conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied.

Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations in this paragraph and on that basis denies them.

61.    The heightened sensitivity of minors' personal data has been recognized by the
federal government in the Children's Online Privacy Protection Act, which provides special
protections for children's personal data.[21]

**RESPONSE:** Meta responds that the Child Online Privacy Protection Act's statutory

language speaks for itself and denies the allegations in this paragraph to the extent they

inaccurately quote from and/or mischaracterize the statute. The remaining allegations in this

paragraph state legal conclusions to which no response is required.

62.    "The monetization of children's biometric ... data is also concerning even if such
data are anonymized."[22] Even "before minors come of age their immutable biometric or
health-related data could be collected[.]"[23] Once a minor's biometric information is compromised,
the damage can be permanent.

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and

denies the allegations in this paragraph to the extent they inaccurately quote from and/or

---

[21] *See* Child Online Privacy Protection Act of 1998, 15 U.S.C. §§ 6501-6506; 16 C.F.R. § 312.2 (defining personal
information as including "[a] photograph, video, or audio file where such file contains a child's image or voice"; *see
also Children's Online Privacy Protection Rule: A Six-Step Compliance Plan for Your Business,* FTC (June 2017),
https://www.ftc.gov/tips-advice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-
compliance.

[22] Stacy-Ann Elvy, *Commodifi4ng Consumer Data in the Era of the Internet of Things,* 59 B.C. L. Rev. 423, 447
(2018).

[23] *Id.*

mischaracterize the article. To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

63.    Defendant's software, applications, and servers have been repeatedly and seriously breached, leaked, or even sold by Defendant. For example, in 2013, Facebook admitted that it exposed six million users' private information to unauthorized viewers for a year.[24] In March of 2018, Facebook exposed the data of up to eighty-seven million users due to a loophole in Facebook's application programming interface.[25] In September of 2018, between fifty and ninety million Facebook users had their data exposed to hackers in a security breach.[26] Then in December of 2018, the New York Times released a report showing that Facebook had violated users' consent on privacy—selling user data to over one-hundred and fifty companies.[27] More recently, in April 2021, the personal data of over five-hundred and thirty million users was publicly posted in an online hacking forum.[28] Defendant chose to not notify the exposed users.

**RESPONSE:** Meta responds that the various articles cited in this paragraph speak for themselves and denies the allegations in this paragraph to the extent they mischaracterize the articles. Answering further, Meta admits that on some occasions it has detected, prevented, and/or in some instances remediated attempts by unauthorized third parties to gain access to systems or data, providing notice when required to do so. Meta further denies that it "violated users' consent on privacy" by "selling user data" and avers that it obtains consent for all actions that require consent. Meta denies the remaining allegations in this paragraph.

---

[24]    https://www.reuters.com/article/net-us-facebook-security/facebook-admits-year-long-data-breach-exposed-6-million-users-idUSBRE95K18Y20130621.

[25] https://vvww.vox.com/policy-and-politics/2018/3/23/17151916/facebook-cambridge-analytica-trump-diagram.

[26] https://www.vox.com/2018/9/28/17914598/facebook-new-hack-data-breach-50-million.

[27] https://www.nytimes.com/2018/12/18/technology/facebook-privacy.html.

[28]    https://www.npr.org/2021/04/09/986005820/after-data-breach-exposes-530-million-facebook-says-it-will-not-notify-users; https://www.businessinsider.com/stolen-data-of-533-million-facebook-users-leaked-online-2021-4.

## VI.    DEFENDANT VIOLATED BIPA AND EXPOSED PLAINTIFFS TO SERIOUS HARMS

### A.    <u>Defendant Collected Plaintiffs' Biometric Data</u>

64.    Until May of 2022,[29] Defendant included facial recognition technology as a feature of its Apps.

**RESPONSE:** Meta denies the allegations in this paragraph.

65.    This facial recognition technology is known as "AR", or "augmented reality".

**RESPONSE:** Meta admits that certain features and/or functionalities available on the Messenger and Messenger Kids applications are referred to as "augmented reality features" in Meta's Face and Hand Effects Privacy Notice and Messenger Kids Face and Hand Effects Privacy Notice but denies that these features and/or functionalities are facial recognition technology.

66.    According to Defendant, "Face . . . effects are augmented reality features that react as people in the scene move, speak and express themselves. They include filters, masks, avatars and other interactive digital experiences."[30] For the Messenger Kids App, Defendant also states and intends that "Your child can use these effects in their camera, photos and videos."[31]

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Face and Hand Effects Privacy Notice.

67.    Defendant began collecting the Biometric Data at issue through its Messenger Kids App when it released the application on December 4, 2017.[32]

**RESPONSE:** Meta admits that the Messenger Kids application was introduced in the U.S. in December 2017. Answering further, Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from

---

[29] Conflicting statements exist as to whether the technology was shut down, halted, or even just temporarily halted in Illinois. It is therefore entirely possible for Defendant to have re-instituted its technology in some form or fashion since this date.

[30]    https://m.facebook.com/help/messenger-app/698345261497544/Messenger+Kids+Face+and+Hand+Effects+Privacy+Notice/?helpref=related_articles&sour ce_cms_id=278118979024443.

[31] *Id.*

[32] https://about.fb.com/news/2017/12/introducing-messenger-kids-a-new-app-for-families-to-connect/.

and/or mischaracterize the article. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

68.    Availability of Messenger Kids rapidly expanded, making worldwide collection a reality. On January 10, 2018, Messenger Kids was made available to children on Kindle Fire tablets. On January 20, Messenger Kids was made available through the Amazon Appstore. On February 14, Messenger Kids was made available to children through the Google Play Store.[33]

**RESPONSE:** Meta admits that the Messenger Kids application became available for parents to download and set up for their children to use on Kindle Fire tablets on or about January 10, 2018, from the Amazon Appstore on or about January 20, 2018, and from the Google Play Store on or about February 20, 2018. Answering further, Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. Meta denies the remaining allegations in this paragraph.

69.    Now, Messenger Kids is available to tens (if not hundreds) of millions of children in at least one-hundred and forty-nine countries and territories across the globe.[34]

**RESPONSE:** Meta admits that the Messenger Kids application is available for parents to download and set up for their children in some jurisdictions outside the U.S., and, on information and belief, there are tens of millions of minors across the world who can use Messenger Kids. Meta denies the remaining allegations in this paragraph.

70.    Messenger Kids is a software application that Defendant advertises as only needing four steps to set up:[35]

> **Download:** First, download the Messenger Kids app on your child's iPad, iPod touch, or iPhone from the App Store. *Update: As of*

---

[33] *Id.*

[34] *Id.*

[35] https://about.fb.com/news/2017/12/introducing-messenger-kids-a-new-app-for-families-to-connect/.

*January 20, you can also download the app from the Amazon Appstore.*

**Authenticate:** Then, authenticate your child's device using your own Facebook username and password. This will *not* create a Facebook account for your child or give them access to your Facebook account.

**Create an account:** Finish the setup process by creating an account for your child, where all you'll need to do is provide their name. Then the device can be handed over to the child so they can start chatting with the family and friends you approve.

**Add contacts:** To add people to your child's approved contact list, go to the Messenger Kids parental controls panel in your main Facebook app. To get there, click on "More" on the bottom right corner in your main Facebook app, and click "Messenger Kids" in the Explore section.

**RESPONSE:** Meta admits that Messenger Kids is a software application that parents can download and set up for their children. Meta otherwise responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article.

71.     Absent from this four-step set up is any information on Defendant's use and collection of Biometric Data through their facial recognition technology.

**RESPONSE:** Meta responds that the article cited in the preceding paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. Answering further, Meta denies that the Messenger Kids application referenced in this paragraph collects biometric identifiers or biometric information or otherwise uses facial recognition technology.

72.     Defendant's facial recognition technology collects Biometric Data through the Apps' "AR Effects and Artwork", including an estimation of the location of parts of users' faces.[36]

---

[36]   Facebook help center: https://m.facebook.com/help/messenger-app/698345261497544/Messenger+Kids+Face+and+Hand+Effects+Privacy+Notice/?helpref=related_articles&sour ce_cms_id=278118979024443.

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

73.    Defendant used face geometries to model users faces and track the users' expressions in real time, in what is often referred to as "intelligent recognition."

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

74.    Specifically, through its Apps, Defendant used scans of face geometry to identify individuals' location, expressions, and movements, thereby collecting and possessing biometric information locally on the operating device as well as collecting and possessing biometric information on Defendant's servers.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

75.    Accordingly, the Messenger Kids and Messenger Apps created scans of face geometry, which BIPA defines as a "biometric identifier." *See* 740 ILCS 14/10.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

76.    According to Defendant, the facial recognition technology results in "playful masks, emojis, and sound effects" which "bring conversations to life". Defendant further advertised that the Apps allow users to "video chat, send text, GIFs, emojis, animojis, and images with live filters."[37]

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. Meta denies the remaining allegations in this paragraph.

---

[37]  https://www.facebook.com/safety/parents/conversations/should-i-let-my-children-use-facebooks-messenger-kids-app.

77.    Defendant advertised these AR filters and effects in content such as the Facebook-created marketing example[38] directly above.

**RESPONSE:** Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they mischaracterize the article, including but not limited to referring to the article as an advertisement.

78.    Defendant has used this AR technology to collect the Biometric Data of each child and adult user who utilizes an effect or filter through the Apps.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

79.    Defendant also collects Biometric Data and information from every other person who appears in the Apps' camera range, photo, or video.[39]

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

80.    Defendant collects separate Biometric Data for each AR effect and filter used in the Apps, which is then stored by Defendant.[40]

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Face and Hand Effects Privacy Notice. The remaining

---

[38] https://about.fb.com/news/2017/12/introducing-messenger-kids-a-new-app-for-families-to-connect/.

[39] https://m.facebook.com/help/messenger-app/698345261497544/Messenger+Kids+Face+and+Hand+Effects+Privacy+Notice/?helpref=related_articles&sour ce_cms_id=278118979024443.

[40] https://m.facebook.com/help/messenger-app/698345261497544/Messenger+Kids+Face+and+Hand+Effects+Privacy+Notice/?helpref=related_articles&sour ce_cms_id=278118979024443.

allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

81.    Throughout the applicable time period, Defendant created and released new AR effects and filters "on a weekly basis" for each holiday, special occasion, and no occasion at all over the past five years, each one collecting and storing Biometric Data.[41]

**RESPONSE:** Meta responds that the Facebook post cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the post. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

82.    Though it does not disclose that it collects and possesses Biometric Data, Defendant acknowledges that it collects and transfers other sensitive data globally, including the data of countless children:[42]

> We collect the content and type of messages, including stickers, gifs, photos, or videos, your child shares from both sent and received messages in Messenger Kids. These may include your child's image or voice if provided. We also collect information about this content, like metadata, which can include information like file size, name of a photo or video, and date or time the photo was taken.

**RESPONSE:** Meta responds that Meta's Messenger Kids Privacy Policy speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Privacy Policy. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect or transfer biometric

---

[41] https://www.facebook.com/messengerkids/posts/our-art-team-releases-new-filters-and-masks-on-a-weekly-basis-that-allow-kids-to/2483604155300180/.

[42] https://www.facebook.com/legal/messengerkids/privacypolicy?version=2020.

identifiers or biometric information and/or cause Meta to possess biometric identifiers or biometric information.

83.    Once collected, Defendant shared sensitive user data both internally within the Facebook companies and externally with Facebook's national and international partners.[43]

**RESPONSE:** Meta responds that Meta's Messenger Kids Privacy Policy speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Privacy Policy.  To the extent Plaintiffs intended the phrase "sensitive user data" to refer to biometric identifiers or biometric information, Meta further denies that the Messenger and Messenger Kids applications collect or share biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

84.    In fact, Defendant explicitly stated in its Messenger Kids Privacy Policy that it "share[d] information globally, both internally within the Facebook Companies, and externally with our partners and with those you connect and share with around the world" and that "Your information may... be transferred or transmitted to, or stored and processed in the United States or other countries outside of where you live".[44]

**RESPONSE:** Meta responds that Meta's Messenger Kids Privacy Policy speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Privacy Policy. To the extent Plaintiffs intend the phrase "[y]our information" to refer to biometric identifiers or biometric information, Meta further denies that the Messenger and Messenger Kids applications collect, store, transfer or share biometric identifiers or biometric information and/or caused Meta to collect, store, transfer, or share biometric identifiers or biometric information.

85.    Defendant collected users' face Biometric Data without obtaining consent, let alone the "informed written consent" required by BIPA. For example, no part of the four-step Messenger Kids sign up process for parents included consent to collection of Biometric Data.

---

[43] *Id.*

[44] *Id.*

**RESPONSE:** Meta responds that the Messenger Kids sign-up process materials speak for themselves and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize those materials. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

86.    Defendant's Apps, moreover, collected Biometric Data from *all* individuals, including non-user minors and adults, whose faces appear in the frame of any AR effect or filter—not just from those who choose to create a profile on the Apps.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

87.    Defendant's collection of biometric identifiers and biometric information through its Apps was automatic and occurs without the involvement or consent of an App user.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

88.    Defendant's collection of Biometric Data is enabled by default when the Apps are downloaded[.]

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

89.    Defendant provided no mechanism by which users or non-users may opt out of the collection of their Biometric Data when using the AR filters and effects in the Apps.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect biometric identifiers or biometric information. Answering further, Meta avers that the use of augmented reality filters and effects available on the Messenger and Messenger Kids applications is a voluntary and optional experience.

90.    Further, Defendant did not disable the AR filters and effects for Illinois users of its Apps until around May of 2022.[45]

**RESPONSE:** Meta admits that augmented reality filters and effects were disabled for Illinois users of the Messenger and Messenger Kids applications in or around May 2022. Answering further, Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Face and Hand Effects Privacy Notice.

91.    Defendant indiscriminately collected Biometric Data for all photographic and videographic subjects, including users, non-users, and minors incapable of providing informed consent.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

**B.    Defendant Possesses Plaintiffs' Biometric Data**

92.    As alleged herein, Defendant collects and stores some user Biometric Data on its servers. Because Defendant owns, operates, and controls these servers, it has exclusive control of their contents. Defendant, moreover, has exclusive control over the process by which Biometric Data is harvested and stored on its servers. Defendant, accordingly, possesses that Biometric Data of Plaintiffs which Defendant collects and causes to be stored on Defendant's servers.

**RESPONSE:** Meta admits that it owns (including through indirect ownership by an affiliate or subsidiary), operates, and controls the majority of the servers used in connection with the Messenger and Messenger Kids applications. Meta also admits that it controls servers that are owned and managed by managed service providers used in connection with the Messenger and Messenger Kids applications. Meta denies that any of the servers used in connection with the Messenger or Messenger Kids applications stores biometric identifiers or biometric information from those applications. The remaining allegations in this paragraph state legal conclusions to

---

[45]    https://m.facebook.com/help/messenger-app/698345261497544/Messenger+Kids+Face+and+Hand+Effects+Privacy+Notice/?helpref=related_articles&sour ce_cms_id=278118979024443.

which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

93.     In addition, Biometric Data of Plaintiffs collected by the Apps is stored locally on the user's device(s). Defendant possesses data stored locally on these devices because it has complete and exclusive control over this Biometric Data through its application. Defendant controls:

- Whether biometric identifiers are collected;

- What biometric identifiers are collected;

- The type of Biometric Data that are collected and the format in which they are stored;

- The facial recognition algorithm that is used to collect Biometric Data;

- What Biometric Data are saved;

- Whether biometric identifiers are used to identify users (creating biometric information);

- Whether Biometric Data are kept locally on users' devices;

- Whether Biometric Data are encrypted or otherwise protected; and

- How long Biometric Data are stored.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

94.     Under 740 ILCS 14/15(a):

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

**RESPONSE:** Meta responds that BIPA's statutory language speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the statute.

95.     Defendant made available no such written policy.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

96.     In 2022, Defendant created and published a Privacy Notice stating that if a Messenger Kids app users uses the AR face and hand effects and filters, "If the information is stored on your child's device, it will be deleted within three years of your child's last use of the effect it was created for, or when you turn the Face and hand effects setting off, whichever occurs first."[46]

**RESPONSE:** Meta admits that it published the cited Messenger Kids Face and Hand Effects Privacy Notice in 2022. Answering further, Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice.

97.     However, Defendant's notice is insufficient under BIPA.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

98.     Defendant's Privacy Notice does not address whether the Biometric Data will be permanently destroyed, only "deleted" from the child's device.

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required,

---

[46] *Id.*

but to the extent a response is required, Meta denies that the Messenger Kids application collects biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

99.     Defendant's Privacy Notice does not address what will occur with any Biometric Data stored outside of the child's device.

**RESPONSE:**  Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger Kids application collects or stores biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

100.     Defendant's Privacy Notice does not address what will occur with the Biometric Data collected and possessed between December 4, 2017 and 2022.

**RESPONSE:**  Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger Kids application collected biometric identifiers or biometric information and/or caused Meta to possess biometric identifiers or biometric information between December 4, 2017 and 2022, and otherwise denies the remaining allegations in this paragraph.

101.     Defendant's Privacy Notice does not address what happens to non-user Biometric Data, i.e. the data of any children and adults who are not the primary user of the individual Messenger Kids account. Under the terms of Defendant's policy, these persons' data could be possessed by Defendant for *over* three years, as there is no way to verify the non-users' last interaction with the specific Messenger Kids account.

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger Kids application collects or stores biometric identifiers or biometric information for anyone and denies the remaining allegations in this paragraph.

102.    Further, Defendant has not made its Privacy Notice immediately available to the public, as it is hidden in its online "Help Center"[47] and must be searched for with the right terms or keywords.

**RESPONSE:** Meta responds that the Messenger Help Center speaks for itself and denies the allegations in this paragraph to the extent they inaccurately describe or mischaracterize the Messenger Help Center. Meta otherwise denies the allegations in this paragraph.

103.    Defendant's Privacy Notice does not expressly disclose that it is collecting and possessing Biometric Data.

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger Kids application collects biometric identifiers or biometric information and/or causes Meta to possess biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

104.    Defendant's Privacy Notice, however, does not deny possession of Biometric Data.

---

[47] https://m.facebook.com/help/messenger-app?helpref=hc_global_nav.

**RESPONSE:** Meta responds that Meta's Messenger Kids Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger Kids application collects biometric identifiers or biometric information and/or causes Meta to possess biometric identifiers or biometric information.

105.    The same deficiencies exist in Defendant's Privacy Notice for its Messenger App; this notice is also insufficient under BIPA.

**RESPONSE:** Meta responds that Meta's Face and Hand Effects Privacy Notice speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize that Face and Hand Effects Privacy Notice and/or the Messenger Kids Face and Hand Effects Privacy Notice. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

C.    **Defendant's Conduct Violates BIPA**

106.    Defendant has failed to comply with BIPA's requirements concerning the collection and possession of Biometric Data. With respect to its collection of Biometric Data, Defendant failed to:

(1)    inform the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2)    inform the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; or

(3)    receive a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b)

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

107.    With respect to its possession of Biometric Data, Defendant failed to:

> Develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

108.    Defendant's failure to comply with BIPA extends to non-users of its devices. This is because Defendant's Apps collected and possessed the Biometric Data of *everyone* who appeared in front of the screen of the subject device subject to the App filters and effects.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

109.    Defendant does not have commercial relationships with the non-users whose Biometric Data it collects, and does not know which non-users' Biometric Data it is collecting. Therefore, Defendant cannot obtain informed written consent from non-users.

**RESPONSE:** Meta admits as a general matter that it does not have a commercial relationship with individuals who do not use its services. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

110.    Furthermore, many of the non-users from whom Defendant collects Biometric Data are minors who cannot give informed written consent.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

### D.    Defendant's BIPA Violations Expose Plaintiffs and Other Illinois Residents to Threats of Serious Harm

111.    Defendant's BIPA violations present an imminent threat of serious harm to Plaintiffs and the proposed class.

**RESPONSE:** Meta denies the allegations in this paragraph.

112.    When Biometric Data is stored on personal electronic devices, persons from whom Biometric Data has been collected face a multiplicity of threats.

**RESPONSE:**  To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

113.    Defendant does not delete the Biometric Data it collects, which are located on numerous devices in this State. Moreover, an App user's Biometric Data may be stored on one or more iPhones, iPads, MacBooks, Androids, Kindles, and other internet-connected devices, as well as any discarded devices. Furthermore, nonusers' Biometric Data that Defendant collects may be stored on one or more devices.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect or store biometric identifiers or biometric information, including on users' devices, and denies the remaining allegations in this paragraph.

114.    For example, an Illinois resident's Biometric Data may be stored on the devices of his or her family, his or her relatives, his or her friends, and anyone else who has downloaded the Apps and has access to their profile.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect or store biometric identifiers or biometric information, including on users' devices, and denies the remaining allegations in this paragraph.

115.    App users cannot prevent their devices from collecting their unique and sensitive Biometric Data, and non-users cannot control whether App-equipped devices containing this

unique and sensitive information are lost, stolen, discarded improperly, given to vendors for repair work, or recycled. Non-users likewise cannot control whether their Biometric Data is extracted, decrypted, or sold.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect or store biometric identifiers or biometric information, including on users' devices. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

116.    Information stored in a central location, such as a server, presents a single breach threat. A sophisticated entity may take measures to securely and centrally store information, guarding against the threat of a data breach. By contrast, as the result of the fact that the Biometric Data that Defendant collects are often stored on numerous devices, Plaintiffs and members of the Class face the imminent threat of disclosure of their Biometric Data as a result of a data breach on any one of the Messenger Kids equipped devices on which their Biometric Data are stored.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first two sentences of this paragraph and on that basis denies them. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

117.    Take, for example, any device with an App downloaded on it. The durability of the memory in devices creates a nearly permanent risk of a data breach of biometric identifiers and information for both device users as well as nonusers whose Biometric Data have been collected. Many devices utilize solid state memory, which can withstand drops, extreme temperatures, and magnetic fields.[48] Unless corrupted, this solid state memory and the information it contains can last in perpetuity. Thus, the Biometric Data collected by the Apps devices will likely outlast the device battery, the functionality of the device screen, and the natural life of the device user.

**RESPONSE:** To the extent that any of the allegations in the first four sentences of this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this

---

[48] Roderick Bauer, *SSD 101: How Reliable are SSDs?*, BackBlaze (Feb. 21, 2019), https://www.backblaze.com/blog/how-reliable-are-ssds/.

litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first four sentences of this paragraph and on that basis denies them. Answering further, Meta responds that the article cited in the third sentence of this paragraph speaks for itself and denies the allegations in this paragraph to the extent they mischaracterize the article. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies the remaining allegations in this paragraph.

118.    By way of further illustration, computing devices are vulnerable to hackers and other malicious bad actors. For example, the Washington Post recently reported that security researchers discovered a "'sustained' . . . and indiscriminate campaign to hack iPhones through certain websites, allowing attackers to steal messages, files and track location data every 60 seconds."[49]

**RESPONSE:** Meta responds that the article quoted in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they inaccurately quote from and/or mischaracterize the article. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

119.    Biometric Data may persist on discarded devices which could be extracted by malicious actors using methods of removal that may or may not currently exist.[50] The risk of illicit harvesting of biometric information from discarded devices with the Apps downloaded on them therefore extends far into the future.

---

[49] Taylor Telford, *Google Uncovers 2-Year iPhone Hack That Was Sustained' and `Indiscriminate',* Washington Post (Aug. 30, 2019, 8:52 AM), https://www.washingtonpost.com/business/2019/08/30/google-researchers-uncover-year-iphone-hack-tied-malicious-websites/PEAM (citing Ian Beer, *A Very Deep Dive Into iOS Exploit Chains Found in the Wild,* Google Project Zero Blog (Aug. 29, 2019), https://googleprojectzero.blogspot.com/ 2019/08/a-very-deep-dive-into-ios-exploit.html.

[50] *See, e.g.,* Josh Frantz, *Buy One Device. Get Data Free: Private Information Remains on Donated Tech,* Rapid? Blog (Mar. 19, 2019), https://blog.rapid7.com/2019/03/19/buy-one-device-get-data-free-private-information-remains-on-donated-devices!, William Gallagher, *Wipe Your iPhone Before Selling It, Because If You Don't You Might Get Your Data Stolen,* Apple Insider (Jul 26, 2018), https://appleinsider.com/articles/18/07/26/wipe-your-iphone-before-selling-it-because-if-you-dont-you-might-get-your-data-stolen.; How to Protect Your Phone and the Data On It, https://www.consumer.ftc.gov/articles/how-protect-your-phone-and-data-it.

**RESPONSE:** To the extent that any of the allegations in this paragraph refer to actions or conduct by Meta or the features and/or functionalities at issue in this litigation, they are denied. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them. Answering further, Meta responds that the article cited in this paragraph speaks for itself and denies the allegations in this paragraph to the extent they mischaracterize the article.

## VII.    PLAINTIFFS' EXPERIENCES WITH DEFENDANT'S PRODUCT

120.    Each Plaintiff has used the Messenger and Messenger Kids applications and their AR filters and effects on themselves and other people. No Plaintiff was aware Defendant's Apps would collect Biometric Data based on facial geometries. However, Defendant, through its Apps, has collected Biometric Data not only from Plaintiffs, but also from individuals appearing in front of Plaintiffs' devices, including parents, children, grandchildren, siblings, cousins, and/or friends of Plaintiffs.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph pertaining to Plaintiffs' alleged activities or their state of mind and on that basis denies them. The remaining allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

121.    Plaintiffs Hartman and Turner both have downloaded and used the Messenger App. Plaintiffs have used the Messenger App for around ten-plus years.

**RESPONSE:** On information and belief, Meta admits that Plaintiffs Hartman and Turner have downloaded and used the Messenger application. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

122.    Plaintiffs Hartman and Turner have three minor children, including Plaintiffs R.H. and E.T. Plaintiffs both downloaded the Messenger Kids App for their minor children, and they and their minor children have used the App for the past several years.

**RESPONSE:** On information and belief, Meta admits that Plaintiff Hartman has downloaded the Messenger Kids application and created a Messenger Kids account. Meta lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

123.    Plaintiffs and their children have regularly used (and continue to regularly use) Defendant's Apps, often daily.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

124.    Plaintiffs and their children have regularly used the aforementioned AR filters and effects within Defendants' Apps—again, often daily.

**RESPONSE:** Meta lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

125.    Defendant applies its facial recognition technology to *every* AR filter and effect that a user is subject to through the Apps.

**RESPONSE:** Meta denies the allegations in this paragraph.

126.    When an Illinois resident downloads an App, Defendant does not inform them that Biometric Data will be collected from every person who uses the AR filters and effects on said app, including the user and any other person whose hands or face appears in front of the application and is subject to any AR filters or effects. Defendant has not informed Plaintiffs that Biometric Data has been and is being collected from the individuals who utilize these AR features on the Apps.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect biometric identifiers or biometric information; however, Meta makes disclosures as to those applications that would satisfy BIPA if the statute applied. Meta denies the remaining allegations in this paragraph.

127.    As a result, Defendant did not obtain consent from Plaintiffs in any form prior to collecting their hand or facial geometry data, let alone written, informed consent as required by BIPA. Nor has Defendant obtained consent from other members of the proposed class.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, Meta denies that the Messenger and Messenger Kids applications collect biometric identifiers or biometric information and denies the remaining allegations in this paragraph.

128.    Defendant has collected biometric information and biometric identifiers from Plaintiffs in violation of BIPA.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

## VIII.  CLASS ALLEGATIONS

129.    Plaintiffs seek to represent the following similarly situated individuals (collectively, the "Class"):

| | |
|---|---|
| Subclass 1: | Every Illinois citizen who was a user of the Facebook Messenger or Messenger Kids application and whose face was used by a face augmented reality filter in the application at any time between June 28, 2018 and the date of the judgment. |
| Subclass 2: | Every Illinois citizen whose face was used by a face augmented reality in the Facebook Messenger or Messenger Kids application at any time between June 28, 2018 and the date of the judgment. |

**RESPONSE:** Meta admits that Plaintiffs purport to bring this action on behalf of the subclasses defined in this paragraph. Meta denies that this action may properly be maintained as a class action, that Plaintiffs' claims are representative of a class, that the definitions are appropriate, or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23. Meta denies the remaining allegations in this paragraph.

130.    Numerosity. The Class includes thousands or millions of people, such that it is not practicable to join all Class members into one lawsuit.

**RESPONSE:** Meta denies that this action may properly be maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23. To the extent the

allegations in this paragraph state legal conclusions, no response is required, but if any response is required, the allegations are denied. Meta otherwise denies the allegations in this paragraph.

131.  <u>Commonality.</u> The issues involved with this lawsuit present common questions of law and fact, including:

- whether Defendant collected and/or possessed the Class's biometric identifiers or biometric information;

- whether Defendant profited from biometric identifiers or biometric information;

- whether Defendant properly informed Class members that it captured, collected, used, and stored their biometric identifiers and/or biometric information;

- whether Defendant obtained "informed written consent" (740 ILCS 14/10) to capture, collect, use, and store Class members' biometric identifiers and/or biometric information;

- whether Defendant used Class members' biometric identifiers and/or biometric information to identify them; and

- whether Defendant's violations of BIPA were committed recklessly or negligently.

**RESPONSE:**  Meta denies that this action may properly be maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23. To the extent the allegations in this paragraph state legal conclusions, no response is required, but if any response is required, the allegations are denied. Meta otherwise denies the allegations in this paragraph.

132.  <u>Predominance.</u> The common questions of law and fact predominate over any individual issue that may arise on behalf of an individual Class member.

**RESPONSE:**  Meta denies that this action may properly be maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23. To the extent the allegations in this paragraph state legal conclusions, no response is required, but if any response is required, the allegations are denied. Meta otherwise denies the allegations in this paragraph.

133.  <u>Typicality.</u> Plaintiffs, the members of the Class, and Defendant have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

**RESPONSE:** Meta denies that this action may properly be maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23. To the extent the allegations in this paragraph state legal conclusions, no response is required, but if any response is required, the allegations are denied. Meta otherwise denies the allegations in this paragraph.

134. <u>Adequacy.</u> Plaintiffs and counsel will fairly and adequately protect the interests of Class members. Plaintiffs' counsel will fairly and adequately represent the interests of the Class. Plaintiffs have retained competent and experienced counsel in the prosecution of this type of litigation.

**RESPONSE:** Meta denies that this action may properly be maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23. To the extent the allegations in this paragraph state legal conclusions, no response is required, but if any response is required, the allegations are denied. Meta otherwise denies the allegations in this paragraph.

135. <u>Superiority.</u> A class action is the appropriate vehicle for fair and efficient adjudication of Plaintiffs' and Class members' claims because if individual actions were required to be brought by each member of the Class, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendant. Trial of Plaintiffs' claims is manageable.

**RESPONSE:** Meta denies that this action may properly be maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23. To the extent the allegations in this paragraph state legal conclusions, no response is required, but if any response is required, the allegations are denied. Meta otherwise denies the allegations in this paragraph.

## <u>COUNT I – VIOLATION OF 740 ILCS 14/15(b)</u>

136. Plaintiffs incorporate paragraphs 1 through 135 as though fully realleged herein.

**RESPONSE:** Meta incorporates by reference its responses and denials set forth above.

137. Defendant violated BIPA section 15(b)(1) by collecting Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information, without first informing Plaintiffs and Class members that Defendant was collecting this information.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

138.    Defendant violated BIPA section 15(b)(2) by collecting Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information, without informing Plaintiffs and Class members in writing of the purpose for the collection. Further, Defendant violated BIPA section 15(b)(2) by failing to inform Plaintiffs and Class members in writing of the length of time Defendant would collect Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

139.    Defendant violated BIPA section 15(b)(3) by collecting Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information, without first obtaining informed written consent authorizing Defendant to collect Plaintiffs' and Class members' biometric identifiers and/or biometric information.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

140.    Defendant's BIPA violations are violations of Defendant's duty of ordinary care owed to Plaintiffs and the Class.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

141.    In the alternative, Defendant's BIPA violations were willful and wanton. Defendant knowingly, intentionally, and/or recklessly violated the duty it owed to Plaintiffs and the Class.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

142.    Plaintiffs incurred injuries that were proximately caused by Defendant's conduct. Through its actions, Defendant exposed Plaintiffs and the Class to imminent threats of serious harm.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

143.    Plaintiffs in this Count I hereby request the relief set forth in the Prayer for Relief below, and incorporated as though fully set forth herein.

**RESPONSE:** Meta admits that Plaintiffs request various forms of relief as set forth in their Prayer for Relief, but Meta denies that it engaged in any actionable conduct or that Plaintiffs are entitled to any relief.

## COUNT II – VIOLATION OF 740 ILCS 14/15(a)

144.    Plaintiffs incorporate paragraphs 1 through 143 as though fully realleged herein.

**RESPONSE:** Meta incorporates by reference its responses and denials set forth above.

145.    Defendant violated BIPA section 15(a) by possessing Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of face geometry and related biometric information, without creating and following a written policy, made available to the public, establishing and following a retention schedule and destruction guidelines for Defendant's possession of biometric identifiers and information.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

146.    Defendant also violated BIPA section 15(a) by failing to timely destroy the Plaintiffs' and Class members' biometric identifiers and biometric information.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

147.    Defendant's BIPA violations are violations of Defendant's duty of ordinary care owed to Plaintiffs and the Class.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

148.    In the alternative, Defendant's BIPA violations were willful and wanton. Defendant knowingly, intentionally and/or recklessly violated the duty it owed to Plaintiffs and the Class.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

149.    Plaintiffs incurred injuries that were proximately caused by Defendant's conduct. Through its actions, Defendant exposed Plaintiffs and the Class to imminent threats of serious harm.

**RESPONSE:** The allegations in this paragraph state legal conclusions to which no response is required, but to the extent a response is required, they are denied.

150.    Plaintiffs in this Count II hereby request the relief set forth in the Prayer for Relief below, and incorporated as though fully set forth herein.

**RESPONSE:** Meta admits that Plaintiffs request various forms of relief as set forth in their Prayer for Relief, but Meta denies that it engaged in any actionable conduct or that Plaintiffs are entitled to any relief.

## RESPONSE TO PRAYER FOR RELIEF

Meta denies that it has engaged in the wrongdoing alleged in the Complaint, denies that it has violated BIPA, denies that this case is suitable for class treatment, and denies that Plaintiffs or any member of the putative classes is entitled to any relief, including but not limited to the relief sought in the section titled "Prayer for Relief". Meta denies any remaining allegations in the Prayer for Relief.

## JURY DEMAND

Meta hereby requests a trial by jury on all claims that can be so tried.

## AFFIRMATIVE OR OTHER DEFENSES

Without assuming any burden of proof not otherwise legally assigned to it, Meta asserts the following separate and additional defenses to the Complaint brought against it. Meta reserves the right to plead any and all defenses that may be evident or revealed after investigation and discovery in this matter.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint, and each purported cause of action asserted therein, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Lack of Standing)

Plaintiffs lack standing to seek the relief demanded because, for example, Plaintiffs have not suffered a sufficient injury in fact from the conduct alleged in the Complaint.

## THIRD AFFIRMATIVE DEFENSE
### (Equitable Defenses)

Plaintiffs' claims are barred in whole or in part by estoppel, waiver, ratification, laches, unclean hands, or other equitable defenses. Upon information and belief, including based on Plaintiffs' allegations, Plaintiffs and/or members of the asserted putative classes voluntarily operated their own devices, voluntarily used and/or consented to the alleged features and functionalities at issue in this litigation, and never objected to the conduct alleged in the Complaint before the filing of this lawsuit.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Plaintiffs and/or members of the asserted putative classes failed to mitigate the alleged damages, and to the extent of such failure to mitigate, any damages awarded to Plaintiffs and/or members of the asserted putative classes should be reduced accordingly. Upon information and belief, Meta alleges that, among other things, Plaintiffs and members of the asserted putative classes failed to mitigate any damages by continuing to use Messenger and/or Messenger Kids, and/or by taking or failing to take other conduct.

## FIFTH AFFIRMATIVE DEFENSE
### (Lack of Causation)

The Complaint and each purported cause of action alleged therein are barred to the extent that Meta's conduct was not the actual or proximate cause of any loss suffered by Plaintiffs and/or members of the asserted putative classes.

## SIXTH AFFIRMATIVE DEFENSE
### (Intervening Acts and/or Omissions)

Meta alleges that all or part of the damages alleged in the Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiffs and/or members of the asserted putative classes and/or persons who acted on their behalf), for whose conduct Meta is not legally responsible, which intervened between the alleged acts and/or omissions of Meta and the alleged damages of Plaintiffs and/or members of the asserted putative classes. The alleged damages, if any, are therefore not recoverable from Meta. In the alternative, any damages which Plaintiffs and/or members of the asserted putative classes may be entitled to recover against Meta must be reduced to the extent that such damages are attributable to persons or entities other than Meta.

## SEVENTH AFFIRMATIVE DEFENSE
### (Comparative Fault or Offset)

Meta alleges that all or part of the damages alleged in the Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiffs and/or members of the asserted putative classes and/or persons who acted on their behalf), for whose conduct Meta is not legally responsible. Therefore, if Plaintiffs and/or members of the asserted putative classes are found to be entitled to recover any of the alleged damages, Meta's share thereof must be apportioned or reduced to the extent that such damages are attributable to persons or entities other than Meta.

## EIGHTH AFFIRMATIVE DEFENSE
### (Improper Class Action)

Plaintiffs may not maintain this lawsuit as a class action because the purported claims of the putative class representatives are not sufficiently typical of those of the purported class members, common issues of fact and law do not predominate over individual issues, liability and damages cannot be proven on a class-wide basis, the putative class representative will not adequately represent the purported class, the putative classes are not ascertainable, the proposed class action would not be manageable, and a class action is not a superior method for adjudicating the purported claims set forth in the Complaint.

## NINTH AFFIRMATIVE DEFENSE
### (Impropriety of Injunctive Relief)

Meta alleges as an affirmative defense that the putative class defined in the Complaint is inappropriate for class certification because Meta has not acted or refused to act on grounds that apply generally to the class, and neither final injunctive relief nor corresponding declaratory relief is appropriate respecting the class as a whole. Meta also alleges that to the extent Plaintiffs are seeking injunctive relief, such relief is barred because Plaintiffs and/or members of the asserted putative class have not suffered irreparable harm and/or there is no real or immediate threat of injury, including because the challenged conduct has been withdrawn and/or cured.

## TENTH AFFIRMATIVE DEFENSE
### (Unconstitutionality)

Meta alleges as an affirmative defense that any award of statutory damages would constitute an unconstitutional penalty on the facts of this case and would be grossly excessive given that Plaintiffs and other members of the putative classes suffered no actual injuries. The statutory damages Plaintiff seeks would violate the due process and equal protection guarantees, and other substantive and procedural safeguards afforded by the Fifth, Eighth, and Fourteenth

Amendments to the U.S. Constitution, as well as multiple provisions of the Illinois Constitution.

Meta also asserts that BIPA is unconstitutionally vague under the First and Fourteenth

Amendments to the U.S. Constitution and comparable provisions of the Illinois Constitution.

### ELEVENTH AFFIRMATIVE DEFENSE
### (Unenforceable Penalty)

Meta alleges as an affirmative defense that any award of statutory damages as sought by

Plaintiffs and the putative classes would not be a reasonable estimate of actual damages, but instead

would amount to a punitive penalty—more akin to punitive damages for strict liability—given that

Plaintiffs and putative class members have not suffered any injury or harm to warrant such relief.

### TWELFTH AFFIRMATIVE DEFENSE
### (Commerce Clause)

Meta alleges as an affirmative defense that BIPA is unconstitutional as Plaintiffs seek to

have it applied in this case to the extent its application would violate the dormant Commerce

Clause of the U.S. Constitution.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (Extraterritoriality)

Plaintiffs' claims fail because BIPA does not have extraterritorial effect, and Plaintiffs

cannot demonstrate that the alleged BIPA violation took place primarily and substantially in

Illinois.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (Good Faith)

Plaintiffs' claims are barred in whole or in part by Meta's good faith and its absence of

negligent, reckless, or intentional conduct. To the extent that BIPA applies to any conduct that

Meta actually undertook, Meta is not liable because it relied in good faith upon a reasonable

interpretation of BIPA's statutory language, and because of Meta's belief that it was not capturing,

collecting, possessing, retaining, disseminating, or otherwise using consumers' biometric identifiers or biometric information.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (No Biometric Identifiers or Biometric Information)

Plaintiffs' claims are barred because any information collected from Plaintiffs and the putative classes does not constitute "biometric information" or "biometric identifiers" under BIPA.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Contractual Choice of Law)

Plaintiffs and the putative classes agreed to be bound by Meta's Terms of Service and Messenger Kids Terms of Service as a condition of using the Messenger and Messenger Kids applications, pursuant to which they agreed that the laws of State of California would govern their claims. As a result, the BIPA claims asserted by Plaintiffs and members of the putative classes are barred.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (COPPA Preemption)

Meta alleges and hereby preserves the defense that the claims of Plaintiffs and putative class members are barred in whole or in part by the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501–6506.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (Release of Claims/Res Judicata)

Some or all of Plaintiffs' and putative class members' claims are barred in whole or in part by a release of claims pursuant to a class settlement in *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747-JD (N.D. Cal.), and under principles of res judicata by operation of the final judgment entered in the *Facebook Biometric* litigation.

## NINETEENTH AFFIRMATIVE DEFENSE
### (740 ILCS 14/25(c))

Meta is an affiliate of Meta Payments Inc. Meta Payments Inc is a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder. Accordingly, all claims against Meta for alleged violations of BIPA are barred as a matter of law. *See* 740 ILCS 14/25(c) ("Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder.").

## TWENTIETH AFFIRMATIVE DEFENSE
### (740 ILCS 14/25(e))

Throughout the putative Class Period, Meta has acted as a government contractor or subcontractor. Accordingly, all claims against Meta for alleged violations of BIPA are barred as a matter of law. *See* 740 ILCS 14/25(e) ("Nothing in this Act shall be deemed to apply in any manner to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.").

Dated: February 23, 2026

Respectfully submitted,

/s/  Gary S. Feinerman

Lauren R. Goldman (*pro hac vice*)
Michael Brandon (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2375
LGoldman@gibsondunn.com
MBrandon@gibsondunn.com

Christopher Chorba (*pro hac vice*)
Diana Feinstein (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7396
CChobra@gibsondunn.com
DFeinstein@gibsondunn.com

Gary S. Feinerman (IL 6206906)
Kathryn K. George (IL 6304674)
Robert C. Collins III (IL 6306004)
Jilliann H. Pak (IL 6346355)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com
katie.george@lw.com
robert.collins@lw.com
jilliann.pak@lw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing document was filed with the

Clerk of the Court using the Court's CM/ECF system on February 23, 2026, which will send

electronic notification to the attorneys of record at the email addresses on file with the Court.

By:      */s/  Gary Feinerman*
         Gary Feinerman (IL 6206906)
         LATHAM & WATKINS LLP
         330 North Wabash Avenue, Suite 2800
         Chicago, IL 60611
         Telephone: (312) 876-7700
         gary.feinerman@lw.com