IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REBECCA HARTMAN, JOSEPH
TURNER, R.H., a Minor, by and through
her Guardian and Next of Friend
REBECCA HARTMAN, and E.T., a
Minor, by and through his Guardian
and Next of Friend JOSEPH TURNER,
on behalf of themselves and all other
persons similarly situated known and
unknown,

      Plaintiffs,

      Case No. 3:23-CV-02995-NJR

v.

META PLATFORMS, INC.,

      Defendant.

## ORDER STAYING CASE

**ROSENSTENGEL, District Judge:**

On February 20, 2026, the Court denied Defendant Meta Platforms, Inc.'s ("Meta") motion for summary judgment based on choice of law (the "Choice of Law Order"). (Doc. 100). The Choice of Law Order declined to enforce a choice of law provision that selected California law to govern Plaintiffs' relationship with Meta, which likely would have been dispositive of Plaintiffs' claims in this case under the Illinois Biometric Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Meta has moved to certify the Choice of Law Order for interlocutory appellate review under 28 U.S.C. § 1292(b). (Doc. 103). In conjunction with that motion, Meta moved to stay the case pending the resolution of interlocutory appellate proceedings. (Doc. 104). Plaintiffs oppose both motions, which are now fully briefed. For the following reasons, Meta's motion to stay the case is granted. The Court

will issue a decision on Meta's motion to certify the Choice of Law Order for interlocutory appellate review under section 1292(b) in due course.

A court's power to stay the proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction." *In re A & F Enter., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). Here, this means that the Court must consider Meta's likelihood of success on the merits in contesting the Choice of Law Order, any irreparable harm that might result from a stay or from the denial of one, and whether the public interest favors a stay. *Id.*

The Choice of Law Order determined that the governing law provision that Plaintiffs ostensibly agreed to was unenforceable because it was against a fundamental public policy of Illinois and Illinois has a materially greater interest in this litigation than California. (Doc. 100). The Court stands firmly behind this decision. But, as explained more fully in the Choice of Law Order, the Court grappled with what it thought was an "analytical conflict" in Seventh Circuit precedent regarding the enforceability of choice of law provisions under Illinois's choice of law rules. (*Id.*). A critical question was whether the Seventh Circuit's decision in *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928 (7th Cir. 1996), provided the governing legal framework for the enforceability inquiry. *Stromberg* held that if the disputed issue is one that could be resolved by contract, then Illinois courts would "stop" the analysis and enforce the agreed-to choice of law clause. *Id.* at 933. Meta insists that *Stromberg* is the "beginning and the end" of the choice

of law analysis because, assuming Plaintiffs could have contractually waived their BIPA rights, it mandates the enforcement of the California choice of law provision.

But more recent decisions from the Seventh Circuit took a different path. In *Smurfit Newsprint Corp. v. Se. Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004), the court explained that governing law provisions are only "generally" enforceable, subject to an "exception" that arises where "the express choice of law would both violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state" (quotation marks omitted). Since *Smurfit*, the Seventh Circuit appears to have eschewed *Stromberg*'s approach in favor of one that *mandates* the consideration of Illinois's public policy and its interest in the case before enforcing a choice of law provision calling for the application of foreign law. *See* (Doc. 100) (collecting cases).

Although the Court believes it applied the correct legal framework, it acknowledges that Meta's position is based on a precedent of the Seventh Circuit. If the Seventh Circuit were to find that *Stromberg* — as opposed to *Smurfit* — provides the governing framework for the choice of law inquiry, the outcome of Meta's motion for summary judgment may be different. And because *Stromberg* has not been overruled, the Court cannot ignore the possibility that it may apply here. So, while the Court disagrees with Meta's unqualified embrace of *Stromberg*, it is incorrect to suggest that Meta has no likelihood of success on the merits of its argument that the choice of law provision at issue should be strictly enforced. Accordingly, this factor weighs in favor of granting a stay.

The Court recognizes that a stay will delay the proceedings in this case. Plaintiffs rightfully are concerned about this consequence because the case is over two and a half

years old and only recently advanced to substantive discovery. But the extended pendency of this case is a concomitant of its complexity. The parties have litigated—and the Court has decided—a wide-ranging motion to dismiss and, after initial discovery, the motion for summary judgment based on choice of law. The parties have valiantly advocated for their clients, and the Court has done its best to decide the issues carefully and correctly. This process has taken some time, yes, but the Court believes that a deliberate approach was necessary.

If the Seventh Circuit were to reverse the Choice of Law Order, and thereby likely end this litigation, Plaintiffs would benefit just as Meta would because they would save the expense of additional years of litigation before reaching the same end point on appeal after final judgment. Conversely, if the Seventh Circuit agrees with the Court's analysis in the Choice of Law Order, Plaintiffs, like Meta, would be able to advance the case with the certainty of a circuit-level decision on choice of law, and Plaintiffs, in particular, could proceed with the leverage of having knocked out a potentially significant issue on appeal. So, on balance, a further delay in the case may cause some harm to Plaintiffs who wish to advance discovery with dispatch. But the Court is not convinced that such harm is irreparable, especially considering the purported benefits of an interlocutory appeal. Thus, the balance of harm does not counsel against the issuance of a stay.

Finally, the public interest will be served by a stay. "There is an overriding public interest in prompt resolution of legal disputes." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 171, 174 (N.D. Ill. 2018). The Court recognized in the Choice of Law Order that the application of California law would have a "potentially dispositive impact

on the case." (Doc. 100). It therefore would make little sense for the parties and the Court to continue spending their resources if the Seventh Circuit determines that the case is being litigated under an incorrect legal framework. And while the public subsidizes the Court's services generally, other litigants are in a queue awaiting their day in Court. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015). Staying a case that may be dispositively decided through an interlocutory appeal serves both interests. Accordingly, the public interest favors the issuance of a stay.

For these reasons, this action is **STAYED** pending the resolution of Meta's motion for interlocutory appellate review under 28 U.S.C. § 1292(b). If this Court and the Seventh Circuit permit Meta's appeal, the case will remain stayed until the Seventh Circuit reaches a decision on the merits of the Choice of Law Order.

**IT IS SO ORDERED.**

**DATED:  May 13, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**